### FRANK J. CHENEY v. MAUMEE CYCLE CO. ET AL.

**I. INSOLVENT CORPORATIONS—APPOINTMENT OF RECEIVER.**

It is the duty of officers and directors of a corporation, upon its becoming insolvent, and ceasing to prosecute the objects for which it was organized, to take steps for the preservation of its property and to convert it into money and apply the proceeds to the payment of its debts. And upon their failure to do so, a court of equity has jurisdiction, upon the application of a creditor, to appoint a receiver to protect and dispose of its property for the benefit of creditors.

**2. UNRECORDED MORTGAGE INVALID AGAINST CREDITORS.**

A mortgage executed by a corporation before going into the hands of a receiver, but not recorded until after the appointment, is of no effect as against creditors and gives the mortgagee no priority in the distribution of the funds arising from the sale of the mortgaged property.

**3. PRESIDENT HOLDING SUCH MORTGAGE CANNOT ASK EQUITY.**

The president of an insolvent corporation, after the appointment of a receiver, at the suit of a creditor, is in no position to ask a court of equity to give him priority over general creditors by virtue of a mortgage which was not recorded until after the appointment of the receiver.

APPEAL from the Court of Common Pleas of Lucas county.

HAYNES, J.

This case comes before us on appeal and has been heard upon the evidence and upon the arguments of counsel. The questions of law involved have been pressed with a great deal of earnestness and ability upon each side, and are somewhat novel, or, at least, a novel application of old principles.

The petition sets forth that the plaintiff is the owner of a mortgage, upon certain real estate in this city, which was executed by the Maumee

Cycle Company, in the ordinary form, that the amount thereof is due and unpaid, and the prayer is for a foreclosure of the mortgage. The petition makes the Maumee Cycle Company, the First National Bank of Toledo Ohio, the George L. Thompson Manufacturing Company, Charles H. Wiltsie and Titus B. Terry, defendants.

Terry sets up by the way of answer, "That on June 15, 1898, the defendant, the Maumee Cycle Company, was an insolvent corporation and had ceased the transaction of the business for which it was incorporated; that upon said day the defendant herein, the First National Bank of Toledo, Ohio, procured a judgment against said company" and levied upon its personal property, "including merchandise, manufactured and unmanufactured materials, and the tools and machinery in its factory building in the city of Toledo, Ohio, the property so levied upon being necessary to enable said corporations to continue its business; and that on said day all of the personal property aforesaid was in the possession of said sheriff under said writ." And it sets up then the appointment of Thomas F. Huber as receiver by the court of common pleas, upon the petition of the First National Bank to take charge of all the property and assets of said Cycle company; that said receiver proceeded to take possession of said property and assets including the property described in the petition, and proceeded to carry on the business of the company under the order of the court and then says:

"This answering defendant says that by reason of the premises all the property and assets of said the Maumee Cycle Company from and after said 15th day of June, 1898, became and were a trust fund in the hands of the receiver thereof, as hereinbefore set forth, for the benefit of all the creditors of said company, and that no priority of lien was acquired by said plaintiff under his said mortgage, by reason of the fact that at the time it was filed for record all of said property was in the possession of said Thomas F. Huber as receiver and there remained until it was delivered to this answering defendant, who has since held possession of the same as receiver as aforesaid."

The George L. Thompson Manufacturing Company comes in and answers and says that it is a large creditor of the Maumee Cycle Company, and as such is interested·in the property sought to be sold, and "that Titus B. Terry is the receiver of said company, and as such represents the interest of this defendant and other creditors of said company, and this defendant disclaims any interest in said property other than by and through said ·receiver, and disclaims any interest adverse to the interest of said receiver."

The answer of Cheney to the answer and cross-petition of Terry, "admits that on June 15, 1898, the defendant, the First National Bank of Toledo, Ohio, procured a judgment against the defendant, the Maumee Cycle Company, by the consideration of this court, and caused an execution to be issued upon said judgment, and the same was levied upon all the personal property of the said defendant, the Maumee Cycle Company, including merchandise, manufactured and unmanufactured materials and the tools and machinery in its factory building in the city of Toledo, Ohio: the property so levied on being necessary to enable said corporation to continue its business; and that on said day all of the personal property aforesaid was in the possession of said sheriff under said writ." And "he admits that there is on the real estate described in the petition a large building used by said the Maumee Cycle Company as a factory, constituting a part of said real estate."

Cheney v. Maumee Cycle Co.

These are some of the issues presented, and the evidence discloses this state of facts in connection with the pleadings : that on June 15, 1898, the cycle company was indebted in a very large sum of money, perhaps $30,000, and was insolvent : That at that time the First National Bank took a judgment against the cycle company, issued execution and levied on all its personal property, and at the same time made an application to the court of common pleas for the appointment of a receiver, and sets forth in its petition the fact that it had obtained a judgment, had made a levy, the fact of the indebtedness of the company and its insolvency, and further stated, that if the business of said corporation could be temporarily continued and its property kept together, to the end that it could be sold as one concern, that much more could be realized from it than in any other way and prays for the appointment of a receiver.

The defendant, the Maumee Cycle Company, answered consenting to the appointment of a receiver as prayed for. Thereupon the receiver was appointed, with full power to take possession of the property and assets and proceed as prayed for in the petition, and that said receiver did thereupon take possession of the assets of said company, including the real estate mentioned in the plaintiff's petition, and the factory thereon.

It further appears that on January 14, 1896, the defendant cycle company executed to the plaintiff a mortgage for some $6,000, upon its real estate, and that on July 30, 1898, after the appointment of the receiver, the mortgage was received and filed for record at the office of the recorder of Lucas county and was there duly recorded, and on February 7, 1899, the plaintiff filed his petition to foreclose the mortgage. I should have said that the personal property has been sold, and the real estate also has been sold under the mortgage, by the consent of all the parties, and the proceeds arising from sale of said real estate have been brought into court and are now in the hands of the court for distribution, and this controversy arises between the plaintiff and the receiver as to the custody, control and disposition of this fund, the plaintiff claiming that he was entitled to hold and possess the same and use it for the payment of the creditors of the Cycle company, *pro rata*, or according to the liens, if they have any.

The first question is, as to the rights of all creditors, through this receiver. On this question I cite the well known case of Rouse v. Merchants' National Bank, 46 Ohio St., 493, syllabus :

" A corporation for profit, organized under the laws of this state, after it has become insolvent, and ceased to prosecute the objects for which it was created, cannot, by giving some of its creditors mortgages, on the corporate property, to secure antecedent debts without other consideration, create valid preferences in their behalf over the other creditors, or over a general assignment thereafter made for the benefit of creditors."

And, whatever the law may be in other states, the Supreme Court of this state, in this case, has laid down the doctrine, and laid it down about as strong as language can make it, that the creditors have a lien upon the property of the insolvent corporation ; the corporate property is held by the trustees for the purpose of paying the creditors of the concern first and, if anything is left, it shall be paid to the stockholders ; that the creditors have a right in equity to have the fund used for the purpose of paying the creditors and to pay them ratably ; and they hold in this particular case, as already read, that they had no right to give a

mortgage or in any way create a preference for particular creditors over the general creditors in that case. Judge Williams says, on page 504:

"It being established that the corporate property is a trust fund for the benefit of the corporate creditors, it follows, that after the insolvency of the corporation is ascertained, and the objects of its creation are no longer pursued, the managing board of directors then having the custody of the property, become trustees thereof for the creditors; and this relation necessarily forbids any discrimination between the beneficiaries, in the distribution or application of the fund. The due execution of the trust demands absolute impartiality toward the *cestui que trustent.*"

Now, that being the condition, we see no reason why a court of equity may not have jurisdiction of the trust property for the purpose of preserving it and disposing of it for the payment of the creditors of the corporation. It was the duty of the trustees upon the happening of this event, which showed that the corporation was insolvent, and not further proceeding to perform its functions or duties, to take such steps as would protect this property and convert it into money and apply the proceeds to the payment of the creditors, *pro rata*, to all creditors alike, and if they failed to perform the duty thus incumbent upon them, we see no reason why a creditor could not invoke the jurisdiction of a court of equity to have the property applied in the manner and for the purpose for which it was the duty of the directors to apply it. However the receiver in this case was appointed, not only upon the petition of the First National Bank, which was a creditor seeking to preserve this property, but also upon the consent or petition of the corporation itself. It admitted all the allegations of the petition and prayed for the appointment of a receiver. It was doing no more than it was the duty of the trustees to do; it was their duty to aid in all ways they could to have this property placed where it would be preserved and sold and the proceeds applied to the payment of the creditors.

After the petition is filed for that purpose, by any person who is interested, we are unable to see how any person could obtain any rights in the property to the exclusion of the creditors. After the above action was taken, the plaintiff, who, as the evidence shows, was president of the corporation and a director of it from the time of its commencement down to this very time, files this mortgage, and now says that by virtue of the filing of that mortgage he is entitled to a priority over these general creditors in these proceedings.

This leads us to the consideration of Betz v. Snyder, 48 Ohio St., 492. There had been prior to this decision some suggestions made by the judges of the Supreme Court in regard to the effect of the non-filing of a mortgage and its effect upon an assignee under the insolvency laws, and finally a case came before that Court in the January term, 1891, being Betz v. Snyder, which is a case where there had been a mortgage on real property which was not filed until after the filing of a deed of assignment which was made for the benefit of the creditors of the grantors; at any rate, it brought up the question as to the effect of the filing of a mortgage upon real property which had been executed, before the deed of assignment, but not filed in the recorder's office until after the deed of assignment was filed in the proper office. The effect of having the mortgage off the record, is discussed at length in this case. The conclusion of the court is, that the recording of the mortgage after the assignment did not give any priority to the mortgagee over the assignee; in other words, that the deed of assignment took in preference to the mortgagee. It

Cheney v. Maumee Cycle Co.

will be remembered that the statute in regard to the filing of mortgages declares that the mortgage shall have no effect until it is filed for record, that is the substance of it, and the holding of the court in Betz v. Snyder, *supra*, is that while it may be good as between the parties, as to other parties who have an interest in the property mortgaged, the mortgage is of no effect whatever and is the same as if it did not exist ; and we understand that that is substantially the position that this plaintiff is placed in. He has a mortgage which he has received ; he failed to file it for record, for reasons of his own, or for any reason, and did not file it until after this receiver had been appointed.

Now, I do not myself think that it made any special difference whether a receiver was appointed or not ; I think the moment the petition was filed and the court came to have jurisdiction of this property, that the result was to exclude plaintiff from obtaining any rights as against these creditors, and under the decisions that I have already cited, the mortgage itself, lying in his hands is void. There can be no question but that these creditors had an interest in this property, and the Supreme Court has said they had a lien upon it ; the court has said it is in the hands of the trustee for the especial benefit of these creditors ; and a trust that is for that purpose can be put to no other purpose whatever, and so it cannot be said that they had no interest in the property ; and if they had an interest in the property as under a trust, it would be very difficult to see how the plaintiff could obtain any rights as against them under an instrument unrecorded and which is declared to be void and of no effect as to those having an interest in the property at the time of filing of the mortgage.

Then there is another view of it. It was the duty of the officers of this company to preserve this fund for the benefit of the creditors, and I am utterly unable to see how the president of that company, who is also a director, having a mortgage of this kind, unrecorded, can after the company had ceased to do business and after this petition had been filed set up any claim or right as against these creditors. He certainly would have had no right to be preferred to any other creditor and he has no right to turn that fund aside for any other purpose or use it for any other purpose than that for which it is really and truly pledged, and that is for the payment of the creditors, and no court of equity can permit him to come in and by the filing of this mortgage say that he obtains a priority by virtue of the record of the mortgage, but he must stand upon his rights as a creditor in common with the other creditors of the company.

Now, to my mind, that substantially disposes of the case. Many questions have been raised and argued to the court, but these few principles, in my judgment, are sufficient to decide the case and to substantially decide the rights of these respective parties, and a decree may, therefore, be entered in favor of the receiver, that he take and hold this fund for 'the benefit of the creditors.

*Seney & Johnson*, for the plaintiff.

*Smith & Beckwith* ; *Chittenden & Chittenden* and *R. S. Holbrook*, for various defendants.